# Marshall *v.* Forest Oil Company.

*Ejectment—Service of process—Party in possession—Acceptance of service—Acts of April* 13, 1807, 4 *Sm. L.* 476, *sec.* 2, *and May* 4, 1852, *P. L.* 574.

In an action of ejectment where the sheriff finds a party in possession other than the person named in the writ, he may, under the act of April 13, 1807, sec. 2, return an acceptance of service by such party, and such return will be equivalent to actual service and proof that it did appear to the officer that such party was in possession of the premises. If the prothonotary does not enter such person as a party when the writ is returned, he may subsequently be compelled to do so, and such correction of the record will not be considered as an amendment under the act of May 4, 1852, by adding the name of a defendant omitted by mistake, but it will be considered as merely carrying out the express provisions of the act of April 13, 1807, sec. 2.

*Oil and gas lease—Forfeiture—Payment of rentals—Abandonment.*

Where a lessee in an oil and gas lease does not absolutely covenant to develop the land, but merely agrees that he will commence operations within a specified period, or thereafter pay a certain fixed sum monthly as rental, and there is nothing in the lease providing that it shall be forfeited by the nonpayment of the rental, the only forfeiture contemplated being that resulting from an abandonment of the lease and the removal of the lessee's property from the premises, the lessor cannot, by an action of ejectment, enforce a forfeiture merely because the lessee failed to pay the rentals. In such a case the lessor's remedy is to proceed for the collection of the rent due, and upon failing to recover it the lessee's rights will be divested.

Where an oil and gas lease does not provide for a forfeiture for nonpayment of rentals, but only by an abandonment by the lessee, it is error for the court so to charge the jury that the latter may be misled into the belief that a mere failure to pay the rental was a ground for forfeiture, although the subject of abandonment was submitted to them.

Argued Oct. 17, 1900. Appeal, No. 115, Oct. T., 1900, by plaintiff, from judgment of C. P. Butler Co., Sept. T., 1900, No. 64, on verdict for defendant, in case of George K. Marshall *v.* The Forest Oil Company. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Ejectment for oil and gas land in Forward township. Before Greer, P. J.

At the trial it appeared that plaintiff claimed under an oil

and gas lease from A. H. Knauff; defendant claimed under an oil and gas lease which A. H. Knauff had made to S. S. Reeseman. The lease from Knauff to Marshall was as follows:

"This agreement made and concluded this 28th day of August, 1895, by and between A. H. Knauff, of Forward township, county of Butler and State of Pennsylvania, party of the first part and George K. Marshall, party of the second part:

. "Witnesseth: That the said first party, for and in consideration of the sum of six hundred and seventy-five dollars to him in hand paid, the receipt of which is hereby acknowledged, and in further consideration of the covenants and agreements hereinafter contained, does covenant and agree to lease, and by these presents, has leased and granted the exclusive right unto the second party, his heirs and assigns, for the purpose of operating and drilling for oil, petroleum and gas, to lay pipe-lines, erect necessary buildings, release and subdivide all that certain tract of land situate in Forward township, county of Butler, State of Pennsylvania (being part of a larger tract of land) bounded and described as follows, to wit:

"On the north by lands of the first party, formerly leased to McQuistion and Marshall; on the east by lands of public road; on the south by land of Henry Buhl; on the west by lands of same, containing fourteen acres, more or less. The party of the second part agrees to commence operations on the above described part or parcel of land hereby leased within ninety days from the date hereof, or thereafter pay to the party of the first part a rental of fourteen dollars per month until operations are commenced, payable direct or at the Butler County National Bank, the party of the second part to have and to hold the premises for and during the term of ten years from the date hereof and so long thereafter as oil and gas can be produced in paying quantities by the second party, his heirs and assigns.

"The party of the second part agrees to give the first party the one eighth part of the petroleum or oil obtained from the said premises as produced in the crude state, the said one eighth part to be set apart in the pipe-line running said petroleum to the credit of the party of the first part. First party is to freely use the premises for the purpose of tillage, except such part as shall be necessary for said mining purposes or operating, and a right-of-way from and to the place of operating. Second party

to have sufficient water and gas to run the engines and the right to move any machinery, fixtures and buildings placed on said premises by said second party or those acting under him.

"If gas is found in sufficient quantities to be utilized off the premises, the consideration to first party shall be one-eighth for each well so utilized. Second party hereby agrees to drill sufficient wells to protect the lease on the above described property, when operations are commenced to proceed with due diligence.

"All gates and fences to be shut. If second party abandons this lease and moves all his property off, it shall become null and void.

"It is further agreed that the second party, his heirs or assigns, shall have the right at any time to surrender up this lease by paying the rentals, if any then due, and be released from all conditions unfulfilled, then and from that time this agreement shall be null and void and not binding on either party, and the payments made shall be retained by the first party as the full stipulated damages.

"All conditions shall extend to the heirs, executors and assigns of both parties."

The other material facts in the case relating to the lease and claim of forfeiture are fully stated in the opinion of the Supreme Court.

It appeared from the record that the sheriff made a return of an acceptance of service by attorneys for A. H. Knauff. When the return was made the prothonotary did not add the name of A. H. Knauff as a party. On June 7, the defendant made the following motion:

And now, to wit: June 7, 1900, defendant by their attorney, before jury is sworn, move the court, the sheriff having served the writ in this case upon A. H. Knauff and made return that he is in possession of the premises, to add the name of A. H. Knauff to the record as party defendant.

Upon which the court made the following order:

It appearing to the court that the defendant company is claiming title to the land described under its lease made by A. H. Knauff, subject to a lease under which the plaintiff claims, the amendment is allowed as asked for before jury sworn. [1]

Plaintiff presented these points.

1. The plaintiff's lease has not been forfeited by a failure to pay rentals.

2. The plaintiff's lease has not been forfeited by a failure to begin operations.

3. The plaintiff's lease has not been forfeited by a failure to continue operations with due diligence.

4. There has been no forfeiture of the plaintiff's lease.

5. There is no evidence of an abandonment of the plaintiff's lease.

6. There is no evidence of a surrender of the plaintiff's lease.

7. Under all the evidence the verdict must be for the plaintiff.

The Court: The points above can all be answered in one answer. Before the plaintiff can recover the possession of the land described in the writ he must convince you from the weight of the evidence that he has fully complied with the covenants in the lease and has done all he promised therein, unless he was released by the lessor, Knauff, or released from some of them by him as claimed by the plaintiff, which is a fact to be determined by you from the evidence. Gentlemen, another question—when Mr. Knauff leased this land to Mr. Marshall he had a right to employ whomsoever he pleased, and Mr. Knauff had not the right to name the men to be employed by him, and if he had prevented the operation of the lease on that account, then he would have stood in the way of Mr. Marshall's operations and could not have set that up; but the gentlemen talked together and seem to have made some arrangement by which this is out of the case. [2–8]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) order as above, adding A. H. Knauff as a party; (2–8) above points and the general answer, quoting it.

*J. D. Marshall*, for appellant.—There is no allegation (or claim) that Knauff's name does not appear on the record on account of omission or mistake. The plaintiff certainly has a right to select the parties he desires for defendants. There is no warrant in law for the court to say to a plaintiff whom he shall sue.

If the construction contended for by the plaintiff be the correct one, the court erred in submitting to the jury, whether Knauff, the lessor, had released the plaintiff from the performance of the several covenants in the lease. If the lease was not forfeited by nonpayment of rental, or nonperformance of any of the other covenants, because there was no forfeiture clause in any of the covenants, the jury had .no right to pass on the question, whether the plaintiff had been released from the performance of the covenants, for a verdict for the defendant would be equivalent to a forfeiture.

The plaintiff contends that there being no forfeiture clause attached to the covenant to commence or pay rental, his lease is valid and the court should have so instructed the jury: Janes v. Emery Oil Company, 1 Penny. 242.

*T. C. Campbell*, with him *R. W. Cummins* and *W. D. Brandon*, for appellee.—This action being ejectment, it became the duty of the sheriff to summon all persons in possession and add their names as parties defendant, and then it became the duty of the prothonotary to enter such names to the action as defendants and make them parties thereto.

An oil lease must be construed with reference to the known character of the oil business and the evident intention of the parties : McNish v. Stone, 152 Pa. 457 ; McKnight v. Manufacturer's Natural Gas Co., 146 Pa. 185.

An oil or gas lease in the first instance is not a grant of the mineral in place or under the land, but the right to search for oil or gas and the right to enter and occupy for the purpose of such search and no other, and no vested right is granted: McNish v. Stone, 152 Pa. 457 ; Barnhart v. Lockwood, 152 Pa. 82 ; Venture Oil Co. v. Fretts, 152 Pa. 451 ; Hooks v. Forst, 165 Pa. 238 ; Westmoreland Natural Gas Co. v. DeWitt, 130 Pa. 249 ; Ahrns v. Chartiers Valley Gas Co., 188 Pa. 249.

When entry has been made, money expended upon the faith of the contract, when the search has been successful and oil or gas has been obtained, then, the relation of landlord and tenant arises, and the contracts take effect as an oil lease : McNish v. Stone, 152 Pa. 457 ; Venture Oil Co. v. Fretts, 152 Pa. 451 ; Ahrns v. Chartiers Valley Gas Co., 188 Pa. 249 ; Hooks v.

Forst, 165 Pa. 238; Colgan v. Forest Oil Co., 194 Pa. 234; Herrington v. Wood, 6 Ohio C. C. 326.

OPINION BY MR. JUSTICE BROWN, January 7, 1901:

On August 28, 1895, A. H. Knauff, the owner of fourteen acres of land in Forward township, Butler county, granted to the appellant the exclusive right to drill and operate for oil and gas on it, for the term of ten years, " and so long thereafter as oil and gas can be produced in paying quantities." The consideration for this was $675, paid by the lessee at the time of the execution of the lease, and one eighth of all the oil and gas produced. The lessee agreed to commence operations within ninety days from the date of the lease, or after that period to pay the lessor $14.00 per month as a rental, until he should commence them. The lessee did not commence his operations at the expiration of the ninety days, but paid the rental to May 28, 1897. On the day preceding, May 27, he made a location and was about to commence, when, according to his testimony, he stopped in pursuance of an understanding with Knauff that, if he kept a man named Burr off the premises, the time for beginning work was to be indefinitely extended, and no rental was to be charged for the interval of inactivity. After May 27, 1897, the lessee did nothing, and on May 22, 1899, Knauff leased the premises, for oil purposes, to S. S. Reeseman, who assigned the lease to the Forest Oil Company, the appellee. Subsequently, on October 20, 1899, Marshall, the appellant, brought ejectment against this company for the recovery of possession of the property. Service of the writ was accepted for Knauff, and, by leave of court, under plaintiff's objection, he was made a party defendant. The verdict was for the defendants, and, on this appeal from the judgment entered, the court's permission to make Knauff a party defendant to the suit, and its alleged failure to properly instruct the jury as to the forfeiture and abandonment of the lease by Marshall are assigned as error.

The writ was originally issued against the Forest Oil Company as sole defendant. It was never actually served. Service was accepted for the company by its attorneys, and the sheriff received an acceptance of service from the attorneys of Knauff as " party and owner in possession." Return was made

of these acceptances of service, and it was equivalent to a return that the sheriff had served the writ on Knauff. By section 2, act of April 13, 1807, 4 Sm. L. 476, it is provided that "where any writ of ejectment shall be issued, and on the service thereof it shall appear to the sheriff that other persons not named in the writ are in possession of the premises or part thereof, such sheriff shall add the name of such person or persons to such writ, and serve the same, and on return thereof, the prothonotary shall enter such additional defendants to the action and they shall be parties thereto." Under this section, it was the duty of the sheriff, if it appeared to him that Knauff, though not named in the writ, was in possession of the premises, to serve the same on him, and the return of the acceptance of service for him was, as just stated, equivalent to actual service, and proof that it did appear to the officer that Knauff was in possession of the premises. What the court did was not to allow an amendment under the Act of May 4, 1852, P. L. 574, by adding the name of a defendant omitted by mistake, but was carrying out the express provisions of the act of 1807; and at the time of the trial, the prothonotary was directed to do what he ought to have done when the writ was returned to him by the sheriff. The first assignment is not sustained.

The first point submitted by the plaintiff was, "The plaintiff's lease has not been forfeited by a failure to pay rentals." Neither this nor the others were specifically answered by the court. The learned judge said of them all together, "The points above can all be answered in one answer. Before the plaintiff can recover the possession of the land described in the writ, he must convince you from the weight of the evidence that he has fully complied with the covenants in the lease and has done all he promised therein, unless he was released by the lessor, Knauff, or released from some of them by him as claimed by the plaintiff, which is a fact to be determined by you from the evidence." In this general answer, the jury were instructed that there could be no recovery by the plaintiff, unless he had fully complied with his covenants in the lease and done all he had therein promised; and, in the general charge, the learned trial judge made clear what he meant in so instructing them. He told them that the plaintiff "must commence the well or pay the rental, and unless he has drilled the well, commenced

it and followed it up with due diligence or paid the rental, he would not have the right to maintain this action of ejectment unless the owner of the land in some way released him from the covenants in the agreement. . . . We say to you that this lease has no forfeiture clause in it, yet, nevertheless, Mr. Marshall could not enforce through the courts, a right of entrance upon that land until he would fully comply with his part of the contract; that is, he would have to commence operations within the time fixed or pay the rentals, unless released by the man who had the right and power to do so; and that becomes a question. . . . If you should find that there was no such arrangement as Marshall claims, by which the time for drilling was extended or rentals released, then we say to you the verdict must be for the defendant, because Mr. Marshall cannot maintain an action of ejectment for the possession of this ground until he fully complies with his covenants in the lease." By these instructions, the jury were unmistakably given to understand that the failure of Marshall to pay the monthly rental, unless released from the same, was a bar to his right to recover. This was error, and the first point submitted by the plaintiff should have been affirmed. There is nothing in the lease providing that it should be forfeited by the nonpayment of the rental. The only forfeiture contemplated is that resulting from an abandonment of the lease and the removal of the lessee's property from the premises; and the lessor could not have rescinded the lease because the lessee failed to pay the monthly rental. He had a right to enforce payment of the same by suit against the lessee for each monthly default, and, upon such default, in a short time any right of the latter in the leased premises would have been divested in proper proceedings by the former: Hooks et al. v. Forst et al., 165 Pa. 238. There was no absolute covenant on the part of the lessee to develop the land. His agreement was that he would commence operations within a specified period, or thereafter pay a certain, fixed sum, monthly, as rental for the premises, which must be considered as damages to the lessor, liquidated by the parties to the lease, for the delinquency of the lessee in commencing his operations. The covenant of the lessee was to pay a certain consideration for the forbearance of the lessor, and not that the leased premises were to be held upon a certain condition, violation of which was to be forfeiture.

The breach of the covenant as to the monthly rental was a breach of a promise to pay a consideration for indulgence, and for it the lessor could neither recover nor defend in ejectment. He could proceed for the collection of the rent due, and, upon failure to recover it, the lessee's rights would be divested. This controversy would have been properly submitted to the jury on the question of Marshall's abandonment of the lease; and his failure to pay the rental, and his general conduct in connection with the leased premises might all have been taken into consideration by the jury in determining the question of abandonment, which was one of intention: Aye v. Philadelphia Company, 193 Pa. 451; but, having been instructed that his mere failure to pay the rental, unless released from the same, was a bar to recovery, the jury may have been misled and their finding may have been based upon that instruction. It is not for us to say whether they found for the defendant on the question of abandonment or of nonpayment of rental. It is sufficient to know that, under the instructions, they could have found for the defendant, because he had not paid the rental; and they may have so found. As stated, this was error, and the case must be retried. The first, second and third points should have been affirmed, and in answer to the fifth, sixth and seventh, the court should have instructed the jury that whether there had been a forfeiture by abandonment of the lease depended upon the acts and intention of the lessee as they found them from the testimony. The eighth point need not be considered. The judgment is reversed and a venire facias de novo awarded.