377 P.2d 655

**ARROW GAS COMPANY OF DELL CITY, TEXAS, a corporation, Plaintiff-Appellant,**

v.

**Richard LEWIS and Ruby A. Lewis, Defendants-Appellees.**

No. 6906.

Supreme Court of New Mexico.

Oct. 29, 1962.

Rehearing Denied Jan. 28, 1963.

Schauer & Stiff, Roswell, for appellant.

Shipley, Seller & Whorton, Alamogordo, for appellees.

CHAVEZ, Justice.

Plaintiff-appellant appeals from a judgment quieting title in appellees to two tracts of land in Otero County.

Suit was filed by appellant for declaratory judgment to determine the respective interests of the parties to 480 acres of land in Sec. 1, Twp. 24 S., R. 18 E., and all of Sec. 18, Twp. 24 S., R. 19 E., N.M.P.M. Appellant claimed title to an undivided one-half interest by virtue of special master's deeds resulting from a sale in attachment proceedings. Appellees answered and by cross-complaint sought to quiet their title to the whole of the land. After various motions and proceedings, not material to this appeal, and after depositions, a motion for summary judgment was filed by appellees together with an affidavit in support thereof. However, a hearing was had and evidence and the testimony of witnesses was taken. The judgment recites a stipulation by the parties agreeing that the court should make its decision based upon the evidence adduced at the hearing, as well as the pleadings, depositions and motion for summary judgment. Requested findings of fact and conclusions of law were filed by the parties and the court thereupon filed its decision consisting of 28 findings of fact and 14 conclusions of law. Judgment followed quieting title to the real estate in appellees.

Appellees, owners of the two tracts of land, on September 1, 1955, entered into a lease agreement with Sam Sredanovich and John W. Gailey, Sr., whereby appellees leased the lands to Gailey and Sredanovich for a term of five years. The purpose of the lease agreement was the development of water, or the effort by lessees to develop water upon the lands for irrigation purposes. It was agreed that if water was developed in sufficient quality and quantity for irrigation purposes, appellees would convey to lessees, Gailey and Sredanovich, one-half of the land. The lands consisted of two non-contiguous tracts and are approximately one mile apart. Section 18 is a short section containing 550 acres.

During the latter part of 1955 or early 1956, the lessees, Gailey and Sredanovich, drilled a well on Sec. 18 to a depth of 480 feet and by means of pumps produced adequate water to irrigate Sec. 18. The lessees cleared some 380 or 390 acres of land on Sec. 18, leveled the same, constructed ditches and planted it to crops in 1956 and 1957. The 1956 crop failed because of frost and the 1957 crop failed because of failure to properly irrigate. In the fall or winter of 1957, and prior to February 1, 1958, the lessees, Gailey and Sredanovich, having exhausted their funds and credit, vacated the premises by removing their tools and farming equipment therefrom, and determined not to proceed further with the development work.

On February 5, 1958, appellant, a creditor of Gailey and Sredanovich, filed suit against them and a separate suit against Sredanovich, attaching all of their right, title and interest in the lands described in the lease agreement. Judgment was entered in these suits and the property sold at attachment

sale. Special master's deeds were issued to appellant conveying all of the right, title and interest of Gailey and Sredanovich in the said real estate.

Appellant contends that, under the lease agreement, Gailey and Sredanovich acquired a one-half interest in the land prior to the time of any claimed abandonment; that at the time of the levy of the writ of attachment Gailey and Sredanovich had performed the obligations required of them under the lease agreement and were entitled to a deed conveying to them a one-half interest in the land, including an undivided one-half interest in Sec. 18 upon which water had been developed and the land cleared, leveled, irrigated and cultivated by Gailey and Sredanovich; that appellant succeeded to the rights of Gailey and Sredanovich by virtue of the attachment sale and special master's deeds.

Appellees argue that no interest in the land vested in Gailey and Sredanovich, other than the right of possession for five years for the purposes set forth in the lease agreement. They also claim that the lease required Gailey and Sredanovich to develop water, or make an effort to develop water, on the lands situated in Sec. 1, and that the lease agreement is entire and not severable.

The lease agreement provides:

"It is agreed and understood that the purpose of this Lease is to develop the above described area for irrigation purposes and that the consideration passing from second parties to first parties for this Lease is the development of water or the effort of second parties to develop water upon said premises for irrigation purposes. The first parties recognize the value to them of exploration for water to be used for irrigation.

"It is agreed and understood between the parties hereto that in the event that water is developed in sufficient quantities and quality for irrigation purposes that first parties shall convey to second parties one-half of the above described premises; the division shall be made at the time it is determined that water of sufficient quantity and quality for irrigation purposes has been developed, and such division shall be made upon an equitable basis. *  *  *"

The lease agreement then contains a provision for the division by arbitrators if the parties cannot agree. The instrument also provides that the lessees have the right to terminate the contract if, in their sole judgment, water cannot be developed for irrigation purposes in sufficient quantity, or at a cost to make the project economically feasible, and that they might cancel the lease by giving notice of such intent. The lease agreement further provides:

"In the event of development of water for irrigation purposes and a division of the land as above set forth, at the end of

this Lease, second parties shall have the first right and option to lease first parties' part of said land, the terms and conditions of such Lease to be determined at the time that second parties exercise their option, * * *.

* * * * * *

"In the event that water in sufficient quantities for irrigation is produced during the term of this Lease, second parties shall have the right to farm any or all of said premises that can be irrigated. * * *

" * * * * * *

"Second parties shall be the sole judge of whether sufficient water for irrigable purposes may be developed on said land at a feasible cost and if they shall decide at any time that sufficient irrigable water cannot be obtained at feasible cost to make the project economically sound, then second parties may cancel and terminate this Lease by giving notice to first parties of such intent."

It is undisputed, and the trial court found, that Gailey and Sredanovich drilled and equipped a well in the latter part of 1955 or early 1956 on Sec. 18, and developed water sufficient in quality and quantity to irrigate all, or practically all, of the lands in said section. Gailey and Sredanovich planted crops in 1956 and 1957 on some 360 to 400 acres in Sec. 18. No effort was made to develop water on Sec. 1.

The trial court also found that during the term of the lease agreement, and prior to the time that appellant filed its lien in attachment against said lands, that Gailey and Sredanovich made the following improvements upon the lands situated in Sec. 18:

"(a) Constructed from between two to three miles of irrigation ditches on said lands.

"(b) Constructed sufficient fences to keep the Lewis defendant's cattle from entering the improved lands and consisting of from one and a half to three and a half miles of fences.

"(c) Cleared from 360 to 400 acres of land of vegetation and brush, disked the same, floated all of it and planted, irrigated and grew crops on all or parts thereof during the crop seasons during each of the years 1956 and 1957."

In addition, the trial court found:

"8. That the cost to Gailey and Sredanovich of improving said lands as aforesaid, exclusive of said water well, was approximately $40.00 per acre for all of said 360 to 400 acres of land which was improved, not including the value of the labor and time expended by Gailey and Sredanovich in the improvement of said land.

"9. That the value of said lands before the improvements were made

thereon by Gailey and Sredanovich was approximately $5.00 to $10.00 per acre.

"10. That the value of the improved land after water was discovered and the improvements made thereon was between $100.00 and $200.00 per acre."

■ This brings us to the question of whether the lessees, Gailey and Sredanovich, upon developing water in Sec. 18, acquired a one-half interest in the lands covered by the lease, or at least a one-half interest in Sec. 18 where water was developed.

Although the instrument in question is denominated a "Lease Agreement" and is for a term of five years, it is more than a lease for years, because it provides for the development of water and the vesting of an interest in the land when water is developed in sufficient quality and quantity for irrigation purposes.

In Terry v. Humphreys, 27 N.M. 564, 203 P. 539, this court held that an instrument which by its terms provides that the lease shall extend for a period of five years, and as long thereafter as oil and gas or either of them is produced by the lessee, is more than a mere lease for years and conveys an interest in "real property." See also Staplin v. Vesely, 41 N.M. 543, 72 P.2d 7; and Vanzandt v. Heilman, 54 N.M. 97, 214 P.2d 864, 22 A.L.R.2d 497.

Thus, under the terms of the lease agreement, water having been developed on Sec. 18 in sufficient quality and quantity for irrigation purposes by Gailey and Sredanovich in the latter part of 1955 or early part of 1956, at that time Gailey and Sredanovich became entitled to a conveyance of a one-half interest in the lands contained in Sec. 18, minus the 10 acres reserved by appellees for their headquarters. This is made clear because the lease agreement provides that the division shall be made at the time it is determined that water in sufficient quality and quantity for irrigation purposes has been developed, and such division shall be made on an equitable basis.

The trial court found that the lessees, Gailey and Sredanovich, were obligated to attempt to develop water on each of said tracts of land and that in the fall and winter of 1957, and prior to February 1, 1958, Gailey and Sredanovich determined not to proceed further with the development work required under the lease agreement. However, the trial court also found that appellant's attachment liens were perfected against the right, title and interest owned by Gailey and Sredanovich in and to the lands. The evidence shows that Gailey and Sredanovich did not intend to farm the land in 1958, due to their strained finances. Sredanovich testified that while he offered to let appellee, Richard Lewis, farm the land, he was not willing to turn over to Mr. Lewis his half interest in the land. Under our holding, the lessees, Gailey and

Sredanovich, acquired a one-half interest in Sec. 18 long prior to any claimed abandonment.

As to lessees' being obligated to develop water, it is sufficient to say that nowhere in the lease agreement is there a provision as to the production of water on all of the land.

The trial court's conclusion of law, that the lease agreement between appellees and Gailey and Sredanovich is personal property and not real property, is erroneous. Appellees cite American Mortgage Co. v. White et al. 34 N.M. 602, 287 P. 702, and State ex rel. Truitt v. District Court of Ninth Judicial Dist., Curry County, 44 N. M. 16, 96 P.2d 710, 126 A.L.R. 651 in support of the trial court's conclusion of law. The cases cited are of no help to appellees. The American Mortgage Co. case involved a grazing lease on state land for a term of years. State v. District Court concerned a lease for a term of five years at a certain rental, with the right of renewal for a second five-year term. At the expiration of that term the lessee was given an option to renew the lease for an additional five years at a certain rental. Thus, the instruments in the above referred to cases were leases for a definite term of years, which are generally characterized as personalty. In the case before us, however, even though the term of the lease agreement is five years, by its express terms the lessees, Gailey and Sredanovich, are given the right to acquire an interest in the land by developing irrigation water thereon. It conveyed more than a chattel interest as, upon the development of irrigation water on the land, it conveyed an interest in "real property." Terry v. Humphreys, supra

The trial court, by conclusion of law No. 7, found that the appellees, prior to February, 1958, became indebted to Gailey and Sredanovich in the sum of $1500 as their part of the cost of drilling the well in Sec. 18.

Appellants tendered a requested finding, which was refused, to the effect that appellees, prior to February, 1958, became indebted to the lessees, Gailey and Sredanovich, in the sum of $5750 as their part of the cost of the drilling and equipping the water well.

The lease agreement provides:

"In the event that water is developed in sufficient quantities and quality to irrigate and it is necessary to case any of the wells, the cost of the casing shall be borne equally by the parties hereto.

"It is agreed and understood that in the event water is developed in sufficient quantities and quality to irrigate, then, and in that event, first parties shall pay one-half of the cost of drilling and the cost of pumps to operate said wells * * *."

Mr. Sredanovich testified that the cost of the water well was $3000, which consisted of cost of drilling the water well—$2100, cost of casing—$900, and that he put in a pump which cost $4500, and an engine which cost $4000, or a total of $11,500. He further testified that the pump and engine were mortgaged by Gailey and Sredanovich to the Western Cotton Oil Company.

In the light of the undisputed evidence, it is our view that appellees were indebted to Gailey and Sredanovich in the sum of $5750, or one-half of the cost of the drilling and equipment, rather than $1500 for one-half of the drilling cost as concluded by the trial court. There is ample evidence in the record to support appellant's requested finding that appellees became indebted to Gailey and Sredanovich in the sum of $5750, constituting one-half of the cost of drilling and equipping the water well in Sec. 18.

The next question is whether the lease agreement is severable. The trial court, by conclusion of law No. 9, held that the lease contracts were entire and not severable. In this conclusion of law we believe that the trial court committed error.

In determining whether or not a contract is divisible, the governing principle is the manifested intention of the parties in view of the nature of the contract, that is, their intention to have performance of the contract in parts and have the performance of a part on one side the price or exchange of a corresponding part on the other. Williston on Contracts, Rev.Ed., Vol. III, § 862, pp. 2418–2419. This court has followed this principle. Fancher v. Board of Commissioners of Grant County, 28 N.M. 179, 210 P. 237; Nunlist v. Keleher, 31 N.M. 358, 246 P. 904, 48 A.L.R. 366; Walters v. U. S. Fidelity & Guaranty Co., 35 N.M. 4, 288 P. 1044. See also 12 Am.Jur., Contracts, § 315, pp. 870–871.

A severable or divisible contract has been defined as one under which the whole performance is divided into two sets of partial performances, each part of each set being the agreed exchange for a corresponding part of the set of performances to be rendered by the other promisor. Williston on Contracts, Rev.Ed., Vol. III, § 860A, p. 2408.

Restatement of the Law, Contracts, § 266(3) e, p. 385, defines divisible contracts as follows:

"A contract is divisible where by its terms, 1, performance of each party is divided into two or more parts, and, 2, the number of parts due from each party is the same, and, 3, the performance of each part by one party is the agreed exchange for a corresponding part by the other party."

We hold that the intention of the parties is clearly expressed in the lease agreements, i. e., the development of water for irriga-

tion purposes and the vesting of an interest in the land upon its having been determined that water has been developed. It is clear from the evidence presented in the trial that the lessees executed their part of the agreements with respect to Sec. 18. It is uncontradicted that the well developed by lessees was adequate to provide water of sufficient quantity and quality to irrigate that section, or such part of it as is practicable to farm by irrigation. This performance by lessees entitled them to a judicial declaration for specific performance by the appellees of their promise to convey an undivided one-half interest in Sec. 18. This is true even though lessees made no effort to develop a water supply in Sec. 1 because the lease agreements are severable. Under their express terms, the parties assented separately to several things in a single contract. The performance by the lessees in developing water on Sec. 18 is the separate consideration for the corresponding performance provided for in the lease agreements on the part of appellees.

The lease agreements are analogous to an oil and gas lease in which several tracts are leased. When one or more of the tracts are developed as bargained for, the lessee is entitled to participation therein, even though the lease may be cancelable as to that land which was not so developed. In Libby v. De Baca, 51 N.M. 95, 179 P.2d 263, this court did not permit cancellation of the entire lease covering 26,000 acres. The lease was held to still be in effect as to 40 acres wherein a paying gas well had been completed because of the expenditures made on that well.

The cause is reversed and remanded to the trial court with direction to reinstate the cause on the docket of said court and to proceed in a manner not inconsistent with the views herein expressed.

IT IS SO ORDERED.

COMPTON, C. J., and CARMODY and MOISE, JJ., concur.

NOBLE, Justice (dissenting).

The majority determined that appellant is entitled to one-half of the land in Section 18, less the ten acres reserved for headquarters, upon the basis that at the time of the levy of the writ of attachment Sredanovich and Gailey had performed the obligations required of them and were entitled to a deed conveying to them one-half of the land described in Section 18. It is apparent that a determination of the rights of the parties depends in the first instance upon the construction of the lease agreement.

Turning then to the written instrument, the purpose and consideration for the lease is stated as:

"* * * to develop the above described area for irrigation purposes and that the consideration passing from sec-

ond parties to first parties for this Lease is the development of water or the effort of second parties to develop water upon said premises for irrigation purposes."

and a provision for conveyance of one-half of the real estate if sufficient water was developed for irrigation, as follows:

"It is agreed and understood between the parties hereto that in the event that water is developed in sufficient quantities and quality for irrigation purposes that first parties shall convey to second parties one-half of the above described premises; the division shall be made at the time it is determined that water of sufficient quantity and quality for irrigation purposes has been developed, and such division shall be made on an equitable basis."

There follows a provision for division by arbitrators if the parties cannot agree. The instrument also provides that the lessees shall have the right to terminate the contract if in their sole judgment water cannot be developed for irrigation purposes in sufficient quantity or at a cost to make the project economically feasible, and that they might cancel the lease by giving notice of such intent.

It is not disputed, and the court found that the lessees did discover and produce water in sufficient quantity and quality to irrigate all or nearly all of the tillable land in Section 18. It is likewise not disputed that no effort was made to discover or develop water for the irrigation of any of the land in Section 1.

The majority opinion proceeds upon a construction that when water, sufficient in quantity and quality, to irrigate Section 18 was produced, Sredanovich and Gailey became immediately entitled to a deed to one-half of the land to which water had been beneficially applied and that appellants succeeded to that right by virtue of the attachment sale and special master's deeds.

This brings me immediately to the question whether the lessees were required to develop water sufficient to irrigate all of the land described in the contract, or at least, make an effort to do so before lessees were entitled to a division of the lands. Stated otherwise, was the contract divisible or entire? Primarily, the question of whether a contract is severable or entire is one of intention of the parties and is to be determined by the language used by the parties and the subject matter of the agreement. Walters v. U. S. Fidelity & Guaranty Co. of Baltimore, Md., 35 N.M. 4, 288 P. 1044; Fancher v. Board of County Commissioners of Grant County, 28 N.M. 179, 210 P. 237; Nunlist v. Keleher, 31 N.M. 358, 246 P. 904, 48 A.L.R. 366. Each case must be determined upon its own facts. If the terms of the agreement clearly show the intention of the parties, the inquiry is at once ended

and no construction is required. But, in many instances, the language used does not clearly settle the question. Resort is then had to the subject matter of the agreement.

The provision for conveyance of an interest in the land, standing alone, leaves some uncertainty as to when the lessees are entitled to receive conveyance; but when the whole instrument is read together and the purpose and nature of the subject matter considered, I have no doubt as to the intention of the parties.

A guide to interpretation of the contract is found in Fancher v. Board of County Commissioners, supra, where it was said that the terms of the contract did not settle the question. It was there said:

"Resort may then be had to the nature of the subject-matter; whether the contract apportions the consideration to each of the items covered may be considered; whether the whole quantity, service, or thing, as a whole, is of the essence of the contract; and perhaps other tests may be resorted to."

The trial court found:

"17. It was the obligation and duty of the lessees, Gailey and Sredanovich, to attempt in good faith to develop water on each of said tracts of land; and if water on said tracts, or either of them, was developed sufficient for irrigation during the term of said lease, * * * develop at their own expense

the area which could be irrigated from the available water so developed."

It is apparent to me from a reading of the entire instrument that it was the duty and obligation of lessees to attempt in good faith to develop water on each of said tracts. It is unnecessary to decide on this appeal whether there was an obligation to further develop the land for which water was available.

Applying the rule of Fancher v. Board of County Commissioners, supra, I quote the purpose and subject matter of the agreement as expressed by the parties, thus:

"It is agreed and understood that the purpose of this Lease is to develop the above described area for irrigation purposes and that the consideration passing from second parties to first parties for this Lease is the development of water or the effort of second parties to develop water upon said premises for irrigation purposes." (Emphasis added)

It is plain to me that the parties themselves expressed their purpose or intention "to develop the above described area for irrigation purposes," and the consideration as "the development of water or the effort of second parties to develop water upon said premises for irrigation purposes." A reading of the purpose clause and the nature of the subject matter indicates that it was the intention of the parties that the entire area

described in the contract be developed, or that an effort be made to develop it. Again, applying the rule of Fancher, this contract does not apportion the consideration to the separate tracts of land nor to less than the whole, until there has been at least an effort to develop water on both tracts.

The parties to the contract agreed that if water was developed suitable and sufficient for irrigation, the lessees were to receive a deed to one-half of the land described in the agreement and that division of the land and the deed should be made when it was determined "that water of sufficient quantity and quality for irrigation purposes has been developed."

The issue is simply whether at the time of the levy of the writ of attachment Sredanovich and Gailey had performed their obligations under the contract to the extent that they had acquired an interest in the real estate which appellees were then obligated to convey to them. As I view the contract, when read as a whole, and considering its subject matter and expressed purpose, this was an entire and indivisible contract requiring the development of, or an honest effort to develop, the entire tract. No provision was made for partial performance until, at least, there was an effort to develop water for both tracts. Since Sredanovich and Gailey made no effort to develop water on any part of Section 1, they were not en-

titled to conveyance of either a portion of the land developed nor of the whole tract. It follows that nothing passed to appellant by the sale or master's deeds.

Appellant asserts that the interest of Sredanovich and Gailey in the lease was transferred to appellant and that appellant succeeded to all rights of the lessees under the lease by virtue of the attachment sale and special master's deeds, including the right of reimbursement of one-half of the expense of drilling and equipping the well on Section 18. The fallacy in this contention lies in the fact that neither the lease nor lessees' interest in the lease were attached. The sheriff's return clearly shows that only "all the right, title and interest of defendants, John W. Gailey, Sr., and Sam Sredanovich, in and to the following described real estate * * *" was attached. The special master's deeds likewise conveyed only their right, title and interest in the described real estate. The language of the deeds, following description of the real estate "as such interest is set forth in and established by that certain lease agreement * * *" does not purport to transfer the lease itself nor any rights thereunder except the right of lessees in the described real estate, nor could it under the return of the attachment itself. The trial court found that the notice of sale, among other things, provided "such sale to include all of the defendants' rights under the terms of said

lease agreement," and concluded that since the sale purported to include property not seized, it was a departure from the levy and orders of the court and that the special master's deeds are void. The deeds themselves did not purport to convey anything except the attached interest in the real estate.

The majority have concluded that appellees were indebted to Gailey and Sredanovich in the sum of $5750, or one-half of the cost of the drilling and equipment. That, however, is of no importance since neither the lease nor lessees' interest in the lease were attached and appellant could not, therefore, have succeeded to any right which lessees may have had to reimbursement of any part of the cost of drilling or of equipment installed.

As I view it, Libby v. De Baca, 51 N.M. 95, 179 P.2d 263, is not analogous. The basis of that decision was a rule of the oil conservation commission constituting forty acres as a drilling unit for oil and gas, and the holding that since gas had been produced from a well on one forty-acre tract the lease would not be canceled as to that tract if certain conditions imposed were complied with. There is no such rule or regulation applicable to the instant case.

The contract being entire and indivisible, it follows that the judgment appealed from should be affirmed.

I dissent.